IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| CW, *ex rel* SAVANNAH COFFMAN | |
| *Plaintiff,* | Case No. |
| WILSON COUNTY, TENNESSEE, and CHRIS SCURLOCK, *in his individual capacity,* | |
| *Defendants* | JURY DEMANDED |

---

## COMPLAINT

Comes now the Plaintiff, CW, *ex rel* Savannah Coffman, by undersigned counsel and for her Complaint against the Defendants states the following:

### Jurisdiction and Venue

1.      This action arises out of the mistreatment suffered by the Plaintiff at the hands of the Defendants in Wilson County, Tennessee.

2.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

3.      Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

4.      Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes

action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

5.      This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district.  Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## Parties

6.      Plaintiff CW is a child under the age of eighteen (18) years who is a sophomore at Mt. Juliet High School.[1] CW is the son of Savannah Coffman. Both are residents of Wilson County, Tennessee.

7.      Defendant Chris Scurlock is a resident of Wilson County, Tennessee, and an Officer with the Wilson County Sheriff's Department. He is a school resource officer for Mt. Juliet High School, and he is sued in his individual capacity.

8.      Defendant Wilson County Tennessee is a political subdivision of the State of Tennessee and ultimately responsible for law enforcement policies in effect within Wilson County including its School Resources Officer program.

9.      At all times relevant to this Complaint, all defendants acted under color of state law.

---

[1] As a result of his minority, the statute of limitations for CW's claims under 42 USC 1983 is tolled until he reaches the age of 18. Tenn. Code Ann. § 28-1-106; *Bishop v. Children's Center for Developmental Enrichment,* 618 F.3d 533 (recognizing state law minority tolling provisions operate to toll statute of limitations for federal claims under 42 USC 1983).

# FACTUAL ALLEGATIONS

## C.W.'s Experience

1. CW is a minor child and is presently a sophomore at Mt. Juliet High School.

2. Mt. Juliet High School is in Wilson County, Tennessee.

3. CW has a documented diagnosis of Autism Spectrum Disorder and has an IEP with Mt. Juliet High School.

4. Defendant Scurlock is employed by the Wilson County Sheriff's Department as a School Resource Officer placed Mt. Juliet High School.

5. Defendant Wilson County, through its Sheriff's Department, assigns School Resources Officers to Mt. Juliet High School.

6. On September 19, 2024, CW received a screenshot that originated from a juvenile in Picayune, Mississippi.

7. The screenshot read:

"This is not a joke. Please pay attention. People are saying this part of a plan. So basically there is three parts. The first one happened when they threatened all of the schools. The second part is what happens today they wanted to scare us. Then the third part is that they are going to pull the fire alarm and shoot everyone when we get outside please spread this message. If y'all's fire alarm goes off run don't walk outside and wait run somewhere that's close to school I'm not sure if this is true but this is what I keep hearing people say and just want everyone to stay safe, please spread this message."

8. On September 19, 2024, CW reposted the screenshot on Snapchat with the caption "Stay safe yall" out of fear for his own safety and the safety of his fellow classmates.

3

9. C.W. believed the screenshot reflected a real risk to himself and other students.

10. After posting this message to his Snapchat, CW also sent the screenshot to his mother, asking her to "[please] homeschool me." Exhibit 1 - Text Message from CW to Savannah Coffman.

11. Students at Mt. Juliet High School circulated the screenshot.

12. Mt. Juliet High School uses Gaggle, a software program that monitors students' social media activity to track safety concerns. Gaggle flagged the screenshot as a subject of concern.

13. On or about September 19, 2024, School Resource Officers Vinson and Butler escorted C.W. to the principal's office after Gaggle alert.

14. At the principal's office, adults who held positions of authority surrounded C.W., specifically Principal Ryan Hill, Assistant Principal McNeese, and Officers Vinson, Butler and Scurlock.

15. Defendants Vinson, Scurlock and Butler interrogated CW and obtained a statement from him.

16. C.W. gave the following written statement: "I found a post from a friend and I wanted to post it to warn people, but it turned out to go wrong and I feel bad for what's happening. I'm in the wrong for this. I got the info off of Snapchat and wanted to post it to warn everyone for their safety. I'm sorry."

17. Defendant Scurlock arrested CW and transported him to Wilson County Youth Services.

18.     Defendant Scurlock charged CW with False Report under Tenn. Code Ann. § 39-16-502.

19.     "False Report" is a criminal offense codified at Tenn. Code Ann. § 39-16-502.[2] The portions of the statute relevant to this case criminalize the following:

(3) Intentionally initiate or circulate a report of a past, present, or impending bombing, active shooter, hostage situation, fire, or other emergency, ***knowing*** that the report is false or baseless and ***knowing***:

(A) It will cause action of any sort by an official or volunteer agency organized to deal with those emergencies, including, but not limited to, action by a special     weapons and tactics team or other division of law enforcement designed to deal         with high-risk situations;

(B) It will place a person in fear of imminent serious bodily injury; or

(C) It will prevent or interrupt the occupation of:

(i) Any building, place of assembly, form of conveyance, or any other place to which the public has access; or

(ii) A private residence or residential building.

(emphasis added).

20.     Based on the plain and unambiguous text of the statute, an officer lacks probable cause to arrest anyone on a charge of "False Report" unless, among other things, the officer has probable cause to believe the defendant ***knew*** the report to be false or baseless and ***knew*** that the report would cause a particular response. There is no crime if the requisite *mens rea* is lacking.

---

[2] While Scurlock filed a delinquency Petition against C.W. for a false report under this statute, other portions of the statute criminalize failing to warn others about possible threats. C.W. believed he was protecting others when he shared the post.

21. At the time he arrested C.W., Defendant Scurlock knew that he lacked probable cause to charge C.W. because Defendant Scurlock had no reason to believe, and upon information and belief, did not believe that C.W. possessed the knowledge of the report's falsity and the reaction others would have to it that is essential to the charge.

22. After arresting C.W., officer Scurlock transported him to Wilson County Youth Services and swore out an affidavit of complaint.

23. Defendant Scurlock's Affidavit of Complaint states: "CW, a child under the age of eighteen (18) years, a resident of Wilson County Tennessee, did commit the offense(s) of False Report, § T.C.A. 39-16-502." Defendant Scurlock did not refer to any other document or attach any other narrative to his Affidavit of Complaint. <u>Exhibit 2 – Affidavit of Complaint</u>.

24. On its face, Defendant Scurlock's Affidavit of Complaint demonstrates that he lacked probable cause to arrest C.W. under the False Report statute because the Affidavit does not allege essential facts to support the charge. Indeed, the Affidavit does not allege any specific facts whatsoever, just a conclusory statement that C.W. committed the offense.

25. At the time he submitted the Affidavit of Complaint, Defendant Scurlock knew that C.W. lacked knowledge of the report's falsity and, in fact, C.W. feared it was accurate. Both the text message CW sent to his mother and the signed statement unequivocally established that C.W. made the Snapchat post out of genuine concern for the well-being of himself and his fellow students.

26.     At some point in time around the filing of his Affidavit of Complaint, Officer Scurlock created and signed a separate document that further illustrated his lack of probable cause. Exhibit 3 – Scurlock Report.

27.     Officer Scurlock did not reference this document in his Affidavit of Complaint and appears to have created the document after C.W.'s arrest and transport to detention.

28.     The facts recited in this later document, even if they had been included in the Affidavit of Complaint, demonstrate that Officer Scurlock lacked probable cause to arrest C.W. under the False Report statute. Officer Scurlock's signed statement does not allege that C.W. possessed the requisite knowledge essential for a charge under the False Report statute.

29.     In fact, Defendant Scurlock investigated the allegations and determined that CW merely reposted a message that originated elsewhere, did not know it was false and feared it was true.

30.     Because the affidavit of complaint so obviously lacks any specific factual information, it is facially invalid to such a degree that no reasonable officer would rely upon it for establishing probable cause.

31.     In the alternative, to any extent that the attached typed paper which is not incorporated by reference into the Affidavit of Complaint could possibly constitute a part of the affidavit of complaint, Defendant Scurlock knowingly and recklessly omitted information from his Affidavit of Complaint which made Defendant Scurlock

aware that C.W. lacked the requisite *mens rea* essential to the alleged delinquent offense.

32.    No valid warrant existed for CW's arrest for False Report.

33.    Defendant Wilson County rarely seeks arrest warrants for juvenile offenders prior to their arrest.

34.    No court order authorized CW's arrest for False Report.

35.    Based on Defendant Scurlock's Affidavit of Complaint, C.W. was ordered to be placed in secure detention at the Putnam County Juvenile Detention Center.

36.    Defendant Scurlock knew that detention in a secure facility was the likely result of his filing the Affidavit of Complaint against CW based on his prior experience in handling similar cases.

37.    The Putnam County Juvenile Detention Center is a secure facility as such term is used under Tennessee's juvenile detention statutes.

38.    Wilson County maintains a contractual arrangement with Putnam County to allow juveniles from Wilson County to be securely detained the Putnam County Juvenile Detention Center.

39.    The Putnam County Juvenile Detention Center accepted C.W. into its secure facility and detained him for more than twenty-four (24) hours.

40.    Wilson County and Defendant Scurlock knew that the Putnam County Juvenile Detention Center did not conduct the investigation required by Tenn. Code Ann. § 37-1-117, as described more fully below, to determine whether C.W. was

detainable under Tenn. Code Ann. § 37-1-114. Instead, Putnam County relied upon Wilson County to verify juveniles' eligibility for placement in secure detention.

41.     Plaintiff CW did not meet the statutory prerequisites for detention in a secure facility under Tenn. Code Ann. § 37-1-114.

42.     As a direct and proximate result of the Defendants' acts and omissions, Putnam County employees subjected C.W. to all the indignities associated with admittance to a secure detention facility.

43.     Based on Plaintiff C.W.'s history and his charge, he was categorically ineligible from being subjected to detention in a secure facility. C.W. had no prior juvenile justice involvement and False Report is not a charge for which pretrial detention is allowed under the statute in the absence of prior juvenile justice involvement.

44.     On September 20, 2024, the Putnam County Juvenile Detention Center released C.W. from detention into the custody of his mother after he had endured more than 24 hours in secure detention.

45.     On May 1, 2025, Magistrate Judge David Kennedy dismissed Plaintiff's charges with prejudice. Exhibit 4 – Order of Dismissal.

46.     C.W. continues to struggle with the social and psychological trauma of the detention, affecting his social interactions and overall well-being.

47.     As result of his unlawful arrest and incarceration, Plaintiff suffered damages including but not limited to mental and emotional distress, personal humiliation, damage to reputation, and loss of liberty.

48.     As a result of his unlawful arrest and prosecution, Plaintiff was expelled from school and removed as manager of the football team.

**TENNESSEE'S MANDATORY JUVENILE DETENTION LAWS**

49.     Tennessee state law creates mandatory predicates that must be met before any child alleged to be delinquent or unruly can be detained in a secure detention facility.  T.C.A. §§ 37-1-114 and 37-1-116.

50.     The mandatory nature of these predicates to juvenile incarceration create an inviolable liberty interest for juveniles against pretrial incarceration except for specific violent or dangerous crimes or where the juvenile has a particular juvenile delinquency history.

51. Specifically, the statute states that

(c) A child shall not be detained in any secure facility or secure portion of any facility unless:

(1) There is probable cause to believe the child has committed a delinquent offense constituting:

(A) A crime against a person resulting in the serious injury or death of the victim or involving the likelihood of serious injury or death to such victim;

(B) The unlawful possession of a handgun or carrying of a weapon, as prohibited by title 39, chapter 17, part 13;

(C) Burglary, under § 39-13-1002, aggravated burglary, under § 39-13-1003, especially aggravated burglary, under § 39-13-1004, an offense under title 39, chapter 13, part 4, or theft, under § 39-14-103, of a motor vehicle; or

(D) A threat of mass violence on school property, as prohibited by § 39-16-517. The court may order a child held under this subdivision (c)(1)(D) to undergo a mental health evaluation under § 37-1-128(e) if appropriate;

(2) There is probable cause to believe the child has committed any other delinquent offense involving the likelihood of serious physical injury or death, or an offense constituting a felony, violation of probation or violation of aftercare, and the child:

> (A) Is currently on probation;

> (B) Is currently awaiting court action on a previous alleged delinquent offense;

> (C) Is alleged to be an escapee or absconder from a juvenile facility, institution or other court-ordered placement; or

> (D) Has, within the previous twelve (12) months, willfully failed to appear at any juvenile court hearing, engaged in violent conduct resulting in serious injury to another person or involving the likelihood of serious injury or death, or been adjudicated delinquent by virtue of an offense constituting a felony if committed by an adult;

(3) There is probable cause to believe the child has committed a delinquent offense, and special circumstances in accordance with the provisions of subsection (a) indicate the child should be detained; however, in any such case, the judge shall, within twenty-four (24) hours of the actual detention, excluding nonjudicial days, issue a written order on a form prescribed by the Tennessee council of juvenile and family court judges setting forth the specific reasons necessitating such detention. Nothing in this subdivision (c)(3) shall be construed as requiring a hearing or formal finding of fact, except as otherwise required by § 37-1-117;

(4) The child is alleged to be an escapee from a secure juvenile facility or institution;

(5) The child is wanted in another jurisdiction for an offense that, if committed by an adult, would be a felony in that jurisdiction;

(6) There is probable cause to believe the child is an unruly child who has violated a valid court order or who is a runaway from another jurisdiction. Any detention of such a child shall be in compliance with subsection (b);

(7) In addition to any of the conditions listed in subdivisions (c)(1)-(6), there is no less restrictive alternative that will reduce the risk of flight or of serious physical harm to the child or to others, including placement of the child with a parent, guardian, legal custodian or relative; use of any of the alternatives listed in § 37-1-116(g); or the setting of bail; and

(8) For the purposes of this subsection (c), "serious physical injury" includes conduct that would constitute the offenses of aggravated rape, rape and aggravated sexual battery.

Tenn. Code Ann § 37-1-114(c).

52.    Thus, Tenn. Code Ann. § 37-1-114 conveys mandatory liberty rights to children against pretrial incarceration in a "secure facility" except in exceptional, clearly delineated circumstances.

53.    The Putnam County Juvenile Detention Center is a "secure facility" within the meaning of T.C.A. § 37-1-114.

54.    T.C.A. § 37-1-117 requires that the "intake or other authorized officer of the court" must make the initial determination regarding whether the § 37-1-114 criteria are met.  The statute mandates that the child be released if the intake officer determines that the secure detention criteria are not met.

## <u>MUNICIPAL LIABILITY ALLEGATIONS</u>

55. For many years, Wilson County has maintained policies that were the moving force behind C.W.'s unlawful arrest and detention, and the arrest and detention of scores of other youths.

56.    The official written policies of the Wilson County Sheriff's Department are not publicly available. Upon information or belief, these policies would show that

the Wilson County Sheriff's Department treats juvenile offenders similarly to adult offenders with no regard to the distinct, mandatory laws governing juveniles.

57.     Specifically, upon information and belief, Plaintiff alleges that Wilson County's Sheriff Department's written policies allow and encourage officers to arrest individuals without probable cause by emphasizing only favorable facts and omitting facts that clearly abrogate probable cause from their analysis of arrest decisions.

58.     Specifically, upon information and belief, Plaintiff alleges that Wilson County's official written policies allow and encourage officers to seek detention of juveniles for offenses and with delinquency histories that are categorically not detainable under Tennessee law.

59.     Wilson County generally and the Wilson County Sheriff Department in particular have known or should have known that its officers routinely arrest individuals, and particularly juveniles, despite knowing that there is no probable cause for arrest.

60.     Upon information and belief, Wilson County generally and the Wilson County Sheriff's office in particular maintain written policies that do not require an arresting officer to know or review the actual elements of a crime before charging an individual with that crime. Specifically, Wilson County generally and the Wilson County Sheriff's Department maintain policies that require probable cause of only some, but not all, of the elements of a crime, and the policies allow officers to routinely omit consideration of *mens rea* from their arrest decisions.

61. The Wilson County Sheriff is a final decision-maker for policy making purposes for Wilson County.

62. As an official with final decision-making authority for Wilson County, the Wilson County Sheriff has ratified the illegal actions of officers routinely arresting juveniles without due consideration of all elements of a crime.

63. As an official with final decision-making authority for Wilson County, the Wilson County Sheriff has ratified actions of officers seeking detention of juveniles under circumstances where the juvenile is categorically not detainable under Tennessee law.

64. Upon information and belief, Wilson County generally and the Wilson County Sheriff's Department in particular maintain a policy of inadequate training and supervision of officers with regards to the requirements of probable cause for arrest.

65. Wilson County generally and the Wilson County Sheriff's Department in particular know or should know that failing to properly train or supervise its officers regarding the requirements of probable cause for arrest has caused and is likely to cause repeated deprivations of constitutionally protected rights.

66. Wilson County generally and the Wilson County Sheriff's Department in particular has been and remains deliberately indifferent to the illegal arrests caused by its failure to properly train or supervise its officers on the requirements of probable cause for arrest.

67.     Upon information and belief, Wilson County generally and the Wilson County Sheriff's Department in particular maintain a policy of inadequate training and supervision of officers with regards to the differences between adult and juvenile detention requirements, and particularly the explicit, limited and mandatory circumstances under which a juvenile can be detained.

68.     Wilson County generally and the Wilson County Sheriff's Department in particular know or should know that failing to properly train or supervise its officers regarding a juvenile's eligibility for detention has caused and is likely to cause repeated deprivations of constitutionally protected rights in the form of unlawful detention of juveniles.

69.     Wilson County generally and the Wilson County Sheriff's Department in particular has been and remains deliberately indifferent to the illegal unlawful detentions caused by its failure to properly train or supervise its officers on the requirements of Tennessee's juvenile detention laws.

70.     The Wilson County Sheriff's Department has sought and obtained the detention of juveniles in violation of Tennessee's detention statute for years, perhaps decades, resulting in the unlawful incarceration of scores of youths. This custom of tolerance and acquiescence to the deprivation of juveniles' rights predates C.W.'s individual case and pervades the entire culture of juvenile justice in Wilson County. Even when ratified by a juvenile magistrate, the magistrate makes detention decisions pursuant to the de facto policy of Wilson County that juvenile offenders can be detained despite the mandatory prohibitions against detention codified in

Tennessee law. These unlawful detentions have persisted no matter who individual judges or magistrates are because the overarching practice comes from Wilson County's long-established custom and practice of using punitive pretrial detention to shock juveniles into better behavior through traumatic experience. The trauma Tennessee's detention statutes seek to avoid is exactly the goal in Wilson County and has been for years.

71.     Wilson County knows or should know that juveniles arrested in Wilson County have been, are being and will be detained in violation of Tennessee's juvenile detention statute because the Wilson County Sheriff's Department maintains statistics related to the charges against juveniles in Wilson County and the unlawful detention of juveniles based on those charges, and, upon information and belief, these records demonstrate that the Wilson County Sheriff's Department's de facto policy of seeking detention of youth without regard to eligibility for detention is the prime mover behind these unlawful detentions.

72.     Wilson County knows or should know about the unlawful detention of juveniles from Wilson County because it maintains contracts with juvenile detention centers, including but not limited to the Putnam County Juvenile Detention Center, and pays per diem rates for such incarceration. Accordingly, Wilson County has long has reason to inquire as to the basis of this ongoing expense and knows or should know that it is paying for the detention of juveniles who are not eligible for detention but continues to do so.

## COUNT 1: UNLAWFUL PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT

**42 USC § 1983**
**(Defendant Chris Scurlock)**

73.     On or around September 19, 2024, Chris Scurlock, made the decision to initiate a prosecution against CW for False Report.

74.     Defendant Scurlock knew or should have known that there was no probable cause to charge CW with False Report.

75.     Defendant Scurlock knew or should have known that by initiating the False Report prosecution against CW, a juvenile with a diagnosed developmental disability, CW would be subject to punitive pretrial detention at the Putnam County Juvenile Detention Center.

76.      CW suffered a deprivation of liberty apart from the initial arrest when he was detained, transported to Wilson County Youth Services, then detained at the Putnam County Juvenile Detention Center, and subjected to unlawful pretrial incarceration.

77.     Defendant Scurlock acted under color of state law in bringing the False Report charge against CW.

78.     The charge was resolved in CW's favor when it was dismissed with prejudice by order of the Wilson County Juvenile Court on May 1, 2025. <u>See Exhibit 4 – Order of Dismissal</u>.

79.     This unlawful prosecution deprived CW of his liberty and inflicted emotional and psychological harm, exacerbating his underlying disability-related challenges.

**COUNT 2: FALSE ARREST IN VIOLATION OF THE FOURTH AMENDMENT**

## 42 U.S.C. § 1983
### (Defendant Chris Scurlock)

80. Defendant Scurlock caused CW to be arrested for False Report on or about September 19, 2024.

81. Defendant Scurlock caused this arrest in accordance with Wilson County's policy, custom, and practice of pursuing juvenile charges based on generalized fear, disability-related behavior, or association with other students, rather than individualized probable cause.

82. Defendant Scurlock did not possess information sufficient to warrant a prudent person in believing that CW had committed or was committing the offense of False Report. Therefore, Defendant Chris Scurlock did not have probable cause.

83. This unlawful arrest infringed upon CW's liberty, exacerbated his autism-related symptoms and inflicted significant emotional and psychological harm.

## COUNT 3: ILLEGAL PRETRIAL INCARCERATION IN VIOLATION OF THE FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS
### 42 U.S.C 1983
### (Defendant Wilson County)

84. Tennessee law uses explicitly mandatory language and substantive predicates to protect children from pretrial incarceration in a secure facility unless the child's circumstance meets the strict, narrowly defined legal prerequisites under Tenn. Code Ann. § 37-1-114.

85. The Putnam County Juvenile Detention Center is a secure facility within the meaning of Tenn. Code ann. § 37-1-114.

86. Wilson County maintains a contractual arrangement with Putnam County

for the secure detention of Wilson County juveniles, and by virtue of this relationship, bears responsibility for ensuring that the detention complies with Tennessee law.

87.     Wilson County's policies, customs, and practices, including contracting with Putnam County for secure detention without safeguards to ensure legal compliance and utilizing secure detention without bona fide consideration of less-restrictive alternatives, was the moving force behind CW's unlawful detentions.

88.     Wilson County maintains policies and customs that promote the pretrial detention of children in circumstances that go far beyond the strict criteria of Tenn. Code Ann. § 37-1-114(c).

89.     As a direct result of Wilson County's illegal policies and customs, Tenn. Code Ann. § 37-1-114(c) secure detention criteria in making their initial decision to jail Plaintiff pending his preliminary hearing.

90.     CW would not have been incarcerated at the Putnam County Juvenile Detention if Wilson County had a policy of applying Tenn. Code Ann. § 37-1-114(c).

91.     Wilson County and acted under color of law in illegally incarcerating CW.

92.     The illegal incarceration infringed upon CW's liberty and inflicted emotional harm on him.

## COUNT 4: ILLEGAL PRETRIAL INCARCERATION IN VIOLATION OF THE FOURTEENTH AMENDMENT  RIGHT TO SUBSTANTIVE DUE PROCESS (Defendant Wilson County)

93.     Children have a federal substantive due process right to not be incarcerated in a secure facility absent a compelling governmental interest.

94.     Tennessee law strictly defines the circumstances that it deems to

constitute a sufficiently compelling basis for the pretrial incarceration of a child. Tenn. Code Ann § 37-1-114(c).

95.   Wilson County maintains illegal policies and customs regarding the secure detention of children to the custody of Putnam County pursuant to their contractual arrangement, despite the absence of any statutory basis under Tenn. Code Ann. § 37-1-114.

96.   Wilson County maintains an illegal policy and custom which encouraged and/or promotes the incarceration of children in a wide array of circumstances which violates the substantive due process liberty rights of children, including CW.

97.   Based on both Wilson County's illegal policies and customs, Juvenile Detention staff ignored Tenn. Code Ann. § 37-1-114 – 117's limits when making their decision to incarcerate children, including Plaintiff.

98.   CW would not have been incarcerated at the Putnam County Juvenile Detention center if Wilson County had a policy of adhering to Tenn. Code Ann. § 37-1-114(c) including its secure detention prerequisites.

99.   CW was incarcerated in violation of his substantive due process liberty rights.

100.   Wilson County acted under color of law in illegally incarcerating CW.

101.   The illegal incarceration infringed upon Plaintiff's liberty and inflicted emotional harm on him.

DAMAGES

102.   As a direct and proximate result of the Defendants wrongful conduct,

Plaintiff has suffered and incurred damages in the form of:

a.  Mental and emotional distress;

b.  Deprivation of federally protected constitutional rights;

c.  Injury to reputation;

d.  Legal expenses for defense of the Harassment petition;

e.  Past and future medical expenses.

## REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

I.    That the Defendants be required to answer this Complaint within the time provided by law;

II.   That this case be tried by a jury;

III.  That judgement for Plaintiff enter against the Defendants on each count;

IV.   That Plaintiff be awarded nominal damages;

V.    That Plaintiff be awarded compensatory damages in an amount determined by the jury;

VI.   That Plaintiff be awarded punitive damages in an amount determined by the jury with respect to Defendant Scurlock only;

VII.  That Plaintiff be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d);

VIII. That Plaintiff be awarded pre- and post-judgment interest against Defendants;

IX.    That Plaintiff be awarded such other, further, and general relief as the

Court deems just and appropriate.

Respectfully submitted,

*s/ Wesley Ben Clark*
Wesley Ben Clark, #32611
Sarah Mansfield, #39476
Paul Douglas Randolph #39667
BRAZIL CLARK, PLLC
760 East Argyle Ave
Nashville, TN 37203
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
sarah@brazilclark.com
paul@brazilclark.com